UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DENNIS ERWIN, Individually and as
Executor of the Estate of SUSAN ERWIN,
deceased,

        Plaintiff,

v.                              Case No.  8:16-cv-01322-T-24 AEP

FORD MOTOR COMPANY,

        Defendant.
_____/

## ORDER

    This cause comes before the Court on Defendant Ford Motor Company's ("Ford") Motion to Dismiss Plaintiff's Complaint (Dkt. 3) and its Memorandum in support thereof (Dkt. 7); Plaintiff Dennis Erwin's, in his individual capacity and as executor of the estate of Susan Erwin, ("Plaintiff") response thereto (Dkt. 17); and Ford's reply to Plaintiff's response (Dkt. 25). Having considered the parties' filings in this case along with the applicable legal authority, the Court finds that it does not have personal jurisdiction over Ford.

## I.    BACKGROUND

    Plaintiff filed his complaint in state court on March 2, 2016, and Ford removed the case to this Court on May 26, 2016. Dkt. 1. Plaintiff is an individual; surviving spouse of the decedent, Susan Erwin ("Decedent"); and a citizen and resident of Ohio, Dkt. 2 at ¶ 4, who "reside[s] part of the year in Florida[,]" Dkt. 17 at Exhib. A at ¶ 2. Ford is a Delaware corporation that designs and manufactures new cars and trucks, with its principal place of business in Dearborn, Michigan. Dkt. 7, Exhib. B at ¶ 3.

Exhibit

1

On March 7, 2014, Decedent was operating a 2010 Ford Edge with the vehicle identification number 2FMDK3JC2ABA19053 (the "2010 Ford Edge"), and "was seated and was properly wearing her lap and shoulder belt[,]" when the 2010 Ford Edge struck another oncoming vehicle. *See* Dkt. 2 at 2; *see also* Dkt. 7, Exhib. B. Plaintiff alleges in his complaint that, during the collision, "the driver's side occupant restraint system in [the 2010 Ford Edge] failed to perform properly and upon impact, the driver's side airbag failed to deploy." Dkt. 2 at 2. Plaintiff claims that "[a]s a result of the non-deployment of the driver's side air bag, [Decedent] died from the injuries sustained[.]" Dkt. 2 at 2.

Plaintiff initiated this action against Ford, asserting causes of action for strict product liability (Count I), negligence (Count II), and negligent infliction of emotional distress (Count IV). Dkt. 2.[1] In a separate count entitled "Personal Jurisdiction" (Count V), Plaintiff alleges the Court has both general and specific personal jurisdiction over Ford. Dkt. 2 at 7-9. Ford has filed a motion to dismiss the complaint, arguing the Court does not have general or specific personal jurisdiction over it. Dkt. 7. Ford also argues it has not consented to personal jurisdiction through the appointment of an agent in the state of Florida to receive service of process. Dkt. 25 at 1 n.1.

## II.   JURISDICTIONAL ALLEGATIONS

### A. Plaintiff's Complaint

Plaintiff asserts in his complaint that Decedent was fatally injured in a collision while operating a 2010 Ford Edge. Dkt. 2 at 2. Plaintiff's complaint does not specify the location of the collision where Decedent incurred her injuries; however, Ford states in its pleadings and the attachments to those pleadings that the collision occurred in Hillsborough County, Florida. *Compare* Dkt. 2, *with* Dkt. 1; Dkt. 6; Dkt. 7; Dkt. 7, Exhib. 1.

---

[1] Plaintiff also asserted claims against the driver of the other vehicle that was involved in the collision with Decedent; however, those claims have been voluntarily dismissed by Plaintiff. See Dkt. 6, Exhib. 1.

Plaintiff includes an entire "count" in his complaint devoted to the Court's personal jurisdiction over Ford. *See* Dkt. 2 at 7-9. First, Plaintiff appears to assert a stream of commerce theory for personal jurisdiction. *See id.* at 7; *see also id.* at 2 ("[a]t all times material to this action, FORD, has been engaged in the business of designing, testing, manufacturing assembling, distributing, warning, marketing, advertising, promoting, selling, providing financial services, training dealership sales personnel, training service personnel; providing technical service instructions, for motor vehicles and placing in the stream of commerce motor vehicles including the [2010 Ford Edge]."). He states that "[t]he presence of Ford vehicles in each of the United States[,] including[] Florida[,] . . . is the intended result of Ford's global market strategy. Ford is . . . part of the . . . Global Economy and it benefits from its participation in the Global market[,] including[] Florida." *Id.* at 7.

Plaintiff alleges that Ford maintains at least 110 Ford dealerships in Florida, sends thousands of vehicles to Florida each year to be sold in Florida, maintains an agent for service of legal process in Florida, and maintains a Regional Headquarters in Maitland, Florida. *Id.* at 7-8. Plaintiff asserts Ford maintains business relationships with "scores of Florida dealerships[,]" Ford "sets policy for interaction of its Florida dealerships with Ford and its other dealerships[,]" Ford "utiliz[es] its Florida dealerships as its designated and compensated agents to provide warranty work on Ford vehicles no matter what state they were sold in[,]" Ford uses the Florida dealerships as its "agents to perform Ford's recall obligations for Ford vehicles no matter what state they were sold in[,]" and "Ford maintains dealership parts and service managers for select dealerships in Florida[.]" Dkt. 2 at 7-8. Plaintiff also claims "Ford provides its Florida dealership with sales training programs and promotional displays[,] . . . [it] provides its Florida dealership service

department with training programs[,] and [it provides] technical support for dealership service departments and to aid the personnel to provide Ford recall and warranty service[.]" *Id.* at 8.

Plaintiff provides that Ford maintains a website for customers in the United States that allows customers to "search for dealerships nearest to the customer's home, including Florida[,]" that "Ford sends letters and information to customers located in Florida regarding defects in Ford vehicles[,] . . . and Ford produces and promulgates vehicles sales brochures to be used in Florida." *Id.* at 7-8.

Finally, Plaintiff alleges Ford participates in Florida's legislative process; uses attorneys to engage in litigation in Florida's state courts and to aid it in interpreting and complying with Florida statutory laws; and requires its Florida dealerships and suppliers to comply with Florida's environmental, franchise, safety, and labor laws. *Id.* at 8-9.

**B. Ford's Motion to Dismiss**

Ford contests personal jurisdiction in its motion to dismiss and asserts that "Ford is neither 'at home' in Florida, nor is Ford's conduct specific to this action sufficient to establish jurisdiction." Dkt. 3 at 1 (citing *Daimler A.G. v. Bauman*, 134 S.Ct. 746, 762 (2014)); *see also* Dkt. 7 at 1. Ford supports its contentions with the April 1, 2016 affidavit of Ford's Retail Network Operations Manager, Elizabeth Dwyer. Dkt. 7, Exhib. B. Dwyer states Ford is a Delaware corporation that is in the business of designing and manufacturing new cars and trucks, and that its principal place of business is located in Dearborn, Michigan. *Id.* at 2.

Dwyer provides that the 2010 Ford Edge at issue was not designed in Florida, was not originally sold by Ford in Florida or to a customer in Florida, and that the 2010 Ford Edge entered Florida without Ford's involvement. She avers that, on July 27, 2009, the 2010 Ford Edge was assembled at Ford's Oakville Assembly manufacturing plant in Oakville, Ontario, Canada; was

subsequently sold as a fleet vehicle on August 11, 2009 to an independent Ford dealership located

in Watsonville, California; and was then shipped to National Car Rental in Hebron, Kentucky.

Dkt. 7, Exhib. B at 2.   Dwyer also represents that, before the 2010 Ford Edge was owned by

Decedent, it was owned by various Enterprise Rent A Cars located in Saint Louis, Missouri and

Cincinnati, Ohio.   Dkt. 7, Exhib. B at 2.   Finally, at some point prior to March 7, 2014, Dwyer

states that the 2010 Ford Edge was owned by Decedent, who resided in Powell, Ohio.   Dkt. 7,

Exhib. B at 2.

Dwyer also states Ford does not have any assembly or manufacturing plants in Florida and

that Ford does not directly engage in servicing Ford vehicles in Florida. *Id.* at 2-3.   She explains

that servicing is performed by independent dealers, who are not corporate affiliates of Ford, and

that the 2010 Ford Edge was never serviced in Florida by any independent Ford dealership. *Id.* at

3.   She also explains that the independent dealerships are not agents of Ford and that, upon the

appointment of each dealership, the owner and operator of that dealership agrees to the following

standard provision of the Ford Sales and Service Agreement:

DEALER NOT AGENT OF THE COMPANY

> 14.     This agreement does not in any way create the relationship of principal and
> agent between the Company and the Dealer and under no circumstances shall the
> Dealer be considered to be an agent of the Company.   The Dealer shall not act or
> attempt to act, or represent himself, directly or by implication, as agent of the
> Company or in any manner assume or create any obligation on behalf of or in the
> name of the Company.

*Id.* at 3.

### C. Plaintiff's Response

In Plaintiff's response, he provides a long list of jurisdictional facts, many of which he

states are stipulated to or uncontested. *See* Dkt. 17 at 2-5.   Plaintiff further includes the affidavits

of Plaintiff and Plaintiff's attorney, Raymond Bodiford, to substantiate facts that he alleges allow

the Court to exercise personal jurisdiction over Ford. Dkt. 17, Exhibs. A & C. Plaintiff's affidavit provides that he and Decedent "resided" in Florida when the accident occurred, and that he has "reside[d]" in Florida for three to four months each year for the last 13 years. Dkt. 17 at 2; Dkt. 17, Exhib. A. Bodiford provides in his affidavit that "Ford sends 1000's of vehicles to its dealerships to be sold in Florida[;]" each year Ford performs "development testing of 75 global market prototypes in Florida" and 54 of Ford's engineers and technicians "reside" in Florida for this testing; Ford has participated in litigation in the state of Florida on multiple occasions and participates in lobbying the Florida legislature and executive branches "for favorable treatment on automobile law[;]" Ford's "wholly owned subsidiary Ford Motor Credit Company maintains offices and agents in Florida for profit and to aid in sales of Ford vehicles in its Florida dealerships[;]" and Ford "maintains a website for the purpose of helping customers" and "Ford's website allows customers from Florida to actually search the inventories of any Ford Florida dealership for a vehicle to purchase." Dkt. 17 at 2-5; Dkt. 17, Exhib. C.

## III.   LEGAL STANDARD

Whether a federal court has personal jurisdiction over a defendant is a question of law. *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000) (quoting *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996)). The plaintiff bears the burden of proof to establish personal jurisdiction over a nonresident defendant. *See Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268 (11th Cir. 2002). To the extent the "plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Meier*, 288 F.3d at 1269 (citing *Madara v. Hall*, 916 F.2d 1510 (11th Cir. 1990)); *see also Sculptchair*, 94 F.3d at 627. "In most cases, the affidavits

can be harmonized, and the court will be in a position to make a decision based on facts which are essentially undisputed." *Venetian Salami v. Parthenias*, 554 So. 2d 499, 502-03 (Fla. 1989).

Whether a court has personal jurisdiction over a defendant requires a court to determine: (1) whether plaintiff has alleged facts sufficient to establish that a basis for jurisdiction exists under Florida's Long-Arm Statute, Florida Statute § 48.193 ("Florida Long-Arm Statute"), and, if so, then (2) whether the court's exercise of jurisdiction satisfies the Due Process Clause of the Fourteenth Amendment to the United States Constitution ("Due Process Clause"). *See Madara*, 916 F.2d at 1514 (providing that both of these steps must be satisfied for the court to exercise personal jurisdiction over a nonresident defendant). "Only if both prongs of the analysis are satisfied may a federal or state court exercise personal jurisdiction over a nonresident defendant." *Id.*

A plaintiff may allege a basis for jurisdiction under the Florida Long-Arm Statute in his complaint either by tracking the statutory language of section 48.193, Fla. Stat., without supporting facts or by alleging specific facts to show that the defendant's actions fall within at least one of the subsections of section 48.193. When determining whether a plaintiff has satisfied the Florida Long-Arm Statute, "federal courts are required to construe it as would the Florida Supreme Court." *Sculptchair*, 94 F.3d at 627; *Madara*, 916 F.2d at 1514 (internal citations omitted). The Florida Long-Arm Statute provides for both specific and general personal jurisdiction over a nonresident defendant. *See* § 48.193(1)-(2), Fla. Stat.

Section 48.193(1) contains a list of acts that a nonresident defendant can do to satisfy the Florida Long-Arm Statute. If a plaintiff brings a claim against a nonresident defendant for performing one of these acts and the claim against that defendant arises from or is directly related to the defendant's forum-related contacts, then that section of the Long-Arm Statute is satisfied.

*See Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220 n. 27 (11th Cir. 2009);§ 48.193(1), Fla. Stat.

Section 48.193(2) is satisfied if a plaintiff can "show[] that the [nonresident] defendant engaged in substantial and not isolated activities in Florida." *Rautenberg v. Falz*, 193 So. 3d 924, 928 (Fla. 2 Dist. Ct. App. 2016); § 48.193(2), Fla. Stat. If a plaintiff can make this showing concerning a nonresident defendant, a court can adjudicate claims against that defendant even if a claim does not arise from or relate to the nonresident defendant's contacts with Florida. *See* § 48.193(2), Fla. Stat.

Once a court finds a plaintiff has satisfied the Florida Long-Arm Statute, it must determine whether its exercise of personal jurisdiction over the nonresident defendant comports with federal due process. "The Due Process Clause of the Fourteenth Amendment constrains a [state's] authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 134 S.Ct. 1115, 1121 (2014) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). A nonresident defendant does not have to be physically present within the forum state for a Court to properly exercise personal jurisdiction over the defendant; however, a plaintiff must show that the nonresident defendant has "certain minimum contacts with the forum state such that maintenance of the suit does not offend the traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). If a plaintiff can make this showing, a court can exercise personal jurisdiction over the nonresident defendant.

There are two types of personal jurisdiction—general and specific—and each requires a different showing with respect to the nonresident defendant's contacts with the forum state. Specific jurisdiction is claim-specific, and a court may only exercise this type of jurisdiction "in a suit arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales*

*de Colombia v. Hall*, 466 U.S. 408, 415-16 (1984).   General jurisdiction, on the other hand, is like section 48.193(2) of Florida's Long-Arm Statute, and it exists only where the defendant has maintained "continuous and systematic" contacts with the forum state. *Id.* at 415-16.   Unlike specific jurisdiction, if a court has general jurisdiction over a nonresident defendant, a plaintiff's claim does not have to arise out of or relate to defendant's contacts with the forum—a court can hear any claim brought against that defendant in that state. *Id.*

## IV.   DISCUSSION

### A. Specific Jurisdiction

#### *1. Section 48.193(1) of the Florida Long-Arm Statute*

As discussed above, section 48.193(1) of the Florida Long-Arm Statute contains a list of specific acts a nonresident defendant can perform to satisfy this subsection of the statute. Plaintiff does not specifically identify which provision of section 48.193(1) upon which he relies, *see* Dkt. 17 at 15, but, based on the allegations in his Complaint, he appears to argue section 48.193(1)(f)(2) is his basis. This provision states in relevant part:[2]

> (1) Any person . . . who . . . does any of the acts enumerated in this subsection thereby submits himself . . . to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
>
>> (f) Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury . . .
>>
>>> (b) Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

---

[2] Plaintiff may also be asserting that Ford is subject to specific personal jurisdiction based on section 48.193(1)(a)(1) for "[o]perating, conducting, engaging in, or carrying out business or business venture in this state or having an office or agency in this state[;]" section 48.193(1)(a)(2) for "[c]ommitting a tortious act within this state[;]" and section 48.193(1)(a)(6)(a) for "[c]ausing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either: (a) [t]he defendant was engaged in solicitation or service activities within this state[.]" The Court does not address these other potential jurisdictional bases, because it finds section 48.193(1)(f)(2), Fla. Stat. (2009), satisfied.

§48.193(1)(f)(2), Fla. Stat. (2009).[3]

The following facts are undisputed. The location of the collision in which Decedent was fatally injured was Hillsborough County, Florida. The injuries relate to an allegedly defective airbag inside the driver's side of the 2010 Ford Edge. The 2010 Ford Edge was manufactured outside of the state of Florida. Ford manufactures vehicles that are shipped into Florida for sale to Florida residents (regardless of whether Ford was actually selling the vehicles directly to the Florida residents). Decedent purchased the 2010 Ford Edge in the state of Ohio. Because of these facts, the Court finds Plaintiff has alleged facts sufficient to establish that a basis for jurisdiction exists under section 48.193(1)(f)(2) of the Florida Long-Arm Statute. *See Davis v. Pyrofax Gas Corp.*, 492 So. 2d 1044, 1046 (Fla. 1986); *Wetzel v. Fisherman's Wharf of Pompano Beach*, 771 So. 2d 1195, 1198 (Fla. 4 Dist. Ct. App. 2000).

To the extent Ford argues Plaintiff has not satisfied section 48.193(1)(f)(2) of the Florida Long-Arm Statute because Decedent did not purchase the 2010 Ford Edge from Ford in Florida and the 2010 Ford Edge entered Florida without its involvement, this argument is unavailing. Florida courts have found in numerous instances a plaintiff has alleged sufficient facts to satisfy the Florida Long-Arm Statute when a plaintiff provides that its claims against a defendant arise from allegedly defective products that cause injury inside the state of Florida, despite the fact that the defendant was located and plaintiff acquired the product outside of the state of Florida. *See Davis*, 492 So. 2d at 1046; *Wetzel*, 771 So. 2d at 1198.

---

[3] The Court examines the version of the Long-Arm Statute that was in effect at the time the 2010 Ford Edge was "manufacture[d] or distribut[ed]." *Fibreboard Corp. v. Kerness*, 625 So. 2d 457, 458 (Fla. 1993) (holding amendments to the Long-Arm Statute are not retroactive and the version of the statute that was in effect during the manufacture or distribution of the product is the version that applies when conducting personal jurisdiction analysis).

2. *Due Process*

Because the Court finds Plaintiff has alleged facts sufficient to establish that a basis for personal jurisdiction exists under section 48.193(1)(f)(2) of the Florida Long-Arm Statute, it must now analyze whether the Due Process Clause permits the Court to exercise specific jurisdiction over Ford. As discussed in the jurisdictional allegations above, Plaintiff offers a wide array of contacts Ford has with the state of Florida. Also as discussed above, the parties do not dispute the existence of these contacts; rather, they disagree whether these contacts are sufficient for the Court to exercise specific personal jurisdiction over Ford without violating the Due Process Clause.

Ford asserts that the Court must determine whether Ford's contacts with Florida give rise or relate to Plaintiff's cause of action. Dkt. 7 at 15-19. Ford then asserts that, pursuant to this analysis, the Court cannot exercise specific personal jurisdiction over it, because the 2010 Ford Edge was not manufactured, sold, or serviced by Ford in the state of Florida and none of the contacts Plaintiff points to caused Decedent's injuries. *Id.* Ford argues Plaintiff's claims do not arise out of or relate to its contacts with the forum, because Plaintiff's injuries would have occurred even in the absence of those contacts. *Id.*

In response, Plaintiff relies on *Kravitz v. Gebrueder Pletscher Druck-Gusswarenfabrik,* 442 So. 2d 985 (Fla. 3 Dist. Ct. App. 1984), for the principle that a nonresident defendant's sale of products to an independent Florida distributor, the likes of which cause injury to a person within the state, are sufficient minimum contacts to subject the nonresident defendant to personal jurisdiction in the state of Florida without violating the Due Process Clause. Dkt. 17 at 14. Plaintiff asserts that specific jurisdiction requires "connexity," and that the claims have to have some relation to Ford's activities. *Id.* Plaintiff contends that Ford's involvement in Florida product liability legislation provides the required connexity. *Id.* at 14-15.

In *Kravitz*, the court looked at the narrow issue of whether section 48.193(1)(f)(2) of the Florida Long-Arm Statute[4] is satisfied when the product that injures a plaintiff is purchased outside of the state of Florida and is then brought into the state of Florida for private use. *Kravitz*, 442 So. 2d at 986-87. Specifically, that court examined whether a product that enters Florida in this way satisfies section 48.193(1)(f)(2)'s requirement that a product enter Florida in the ordinary course of commerce or trade for jurisdictional purposes. *Id.* The court ultimately found the nonresident defendant's sale of products similar to the one that caused injury to the Florida plaintiff satisfied section 48.193(1)(f)(2) of the Florida Long-Arm Statute, without offending traditional due process requirements. *Id.* at 987 ("we hold that the defendant's activities in the state, *i.e.*, the sales to an independent Florida distributor of bicycle racks, the likes of which caused injury to a person within the state, constitute sufficient minimum contacts for the purpose of jurisdiction under section 48.193(1)(f)(2), Florida Statutes (1981)[]").

Plaintiff's reliance on *Kravitz* for this Court's federal due process analysis is misplaced, because *Kravitz* was decided in 1984— before many significant developments in the law related to federal due process and specific jurisdiction analysis, *See generally*, Michael Vitiello, *Limiting Access to U.S. Courts: The Supreme Court's New Personal Jurisdiction Case Law*, 21 U.C. Davis. J. Int'l L. & Pol'y 209, 210 (2015) (detailing the history and developments applicable to specific jurisdiction's analysis of the Due Process Clause from the late 1970s until the date of the article's publication), and  long before the United States Supreme Court's recent decision in *Walden v. Fiore*, 134 S.Ct. 1115 (2014).  Under *Walden*, "the defendant's suit-related conduct must create a substantial connection with the forum State[]" for that state to exercise jurisdiction consistent with due process. *Id.* at 1121-22. "[M]ere injury to a forum resident is not a sufficient connection to

---

[4] The specific version of the Florida Long-Arm Statute addressed in that case was the version in effect in 1981. *Kravitz*, 442 So. 2d at 986.

the forum." *Id.* at 1125 (quoting *Calder v. Jones*, 465 U.S. 783 (1984)). "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* To satisfy Due Process, "[t]he relationship must arise out of contacts that the 'defendant himself' creates with the forum State." *Id.* at 1122 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)) (emphasis in original).[5]

"Neither the Supreme Court or the Eleventh Circuit has established a specific approach for district courts to follow when deciding whether a nonresident defendant's contacts are sufficiently related to the plaintiff's claims[,]" *Waite v. All Acquisition Corp.*, No. 15-cv-62359-BLOOM/Valle, 2016 WL 2346743, at *3 (S.D. Fla. May 4, 2016) (quoting *Ralls Corp. v. Huerfano River Wind, LLC*, 27 F.Supp.3d 1303, 1316-17 (N.D. Ga. 2014)), but the Eleventh Circuit has stated that a claim arises out of or relates to the defendant's contact with the forum state if the contact is a "but-for cause" of the claim, and the claim is a "foreseeable consequence" of the contact, *see Oldfield*, 558 F.3d at 1222-23 (holding exercise of specific personal jurisdiction would violate the Due Process Clause where a nonresident defendant's advertisement of its resorts on its website was the but-for cause of the plaintiff's injury at the resort, but that this injury was not a foreseeable consequence of that contact); *Fraser v. Smith*, 594 F.3d 842 (11th Cir. 2010).

Here, as discussed in the jurisdictional allegations, Plaintiff offers a wide array of contacts Ford has with the state of Florida, however, none of these contacts are sufficient for the Court to exercise jurisdiction over Plaintiff's claims. None of Plaintiff's claims arise out of or relate to the contacts Plaintiff alleges Ford has had with Florida, and none of these contacts are the "but-for"

---

[5] The Court notes that the Eleventh Circuit has not yet examined *Walden* and its "suit-related conduct" language, but, as the United States District Court for the Southern District of Florida points out in *Waite v. All Acquisition Corp.*, No. 15-cv-62359-BLOOM/Valle, 2016 WL 2346748 (S.D. Fla. May 4, 2016), other appellate courts have. *Id.* at *3 (providing *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014), *as corrected* (May 12, 2014), and *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 821 (8th Cir. 2014), as examples).

cause of Plaintiff's claims. Plaintiff does not allege in his complaint that the 2010 Ford Edge was one of the thousands of vehicles Ford shipped to Florida to be sold in a Florida Ford dealership; Plaintiff does not allege that the 2010 Ford Edge was supposed to be serviced or was insufficiently serviced by one of the Florida Ford dealerships pursuant to an agreement between the dealerships and Ford; Plaintiff does not allege a Ford Edge of the same type as the 2010 Ford Edge was one of the vehicles that Ford subjected to global testing in Florida and that this testing resulted in the allegedly defective airbag that caused Decedent's injuries; and Plaintiff's claims do not arise or relate to Ford's advertisements in the state of Florida, the business Ford Motor Credit Company conducts in the state of Florida, or Ford's participation in litigation in Florida or Florida's legislative process. The Court agrees with Ford that Decedent's injuries for which Plaintiff seeks relief would have occurred regardless of whether the contacts Plaintiff alleges Ford has with Florida existed or not.

In making its determination, the Court finds *Hinrichs v. General Motors of Canada, Ltd.*, No. 1140711, 2016 WL 3461177 (Ala. June 24, 2016), instructive. In that case, the Alabama Supreme Court affirmed a judgment dismissing the case as to a nonresident vehicle manufacturer defendant on the basis that the court did not have jurisdiction over the defendant. *Id.* at *1. Like the case before this Court, *Hinrichs* involved a products liability lawsuit where the vehicle that allegedly injured the plaintiff in the forum state was manufactured by the nonresident defendant, sold to the plaintiff outside of the forum state, and only reached the forum state because the plaintiff drove the vehicle into the forum state. *Id.* Also similar to Plaintiff, the *Hinrichs* plaintiff asserted Alabama had personal jurisdiction over the nonresident defendant, because:

> Defendant, General Motors of Canada, Ltd. is subject to the jurisdiction of this Court as it has sufficient contacts with the state of Alabama; placed the subject vehicle into the stream of commerce; engaged in continuous and systematic business in the state of Alabama; *generates significant export earnings by shipping*

> *90 percent of the million vehicles which it manufactures to United States which*
> *includes Alabama;* and manufactured the subject vehicle for General Motors
> Corporation with knowledge that General Motors Corporation was selling vehicles
> throughout the United States, including Alabama, so as to purposely avail itself to
> the jurisdiction of this Court.

*Id.* at *3.

In finding that Alabama lacked specific personal jurisdiction over the nonresident

defendant because of the Due Process Clause, the Alabama Supreme Court first examined the

jurisprudence behind the stream of commerce theory for personal jurisdiction—a theory Plaintiff

appears to assert in his Complaint. The Alabama Supreme Court found that "there simply [was]

no 'suit-related conduct' that creates a substantial connection between [nonresident] defendant and

Alabama if the vehicle was not sold in Alabama, even though [the plaintiff] was injured in

Alabama." *Id.* at *27. The court also noted that the stream of commerce in that case ended when

the allegedly defective vehicle was sold to the plaintiff outside of the forum state. *Id.* at *23.

To the extent Plaintiff argues that the independent Ford dealerships located in Florida are

agents of Ford for purposes of performing Ford's warranty and recall obligations and that those

contacts can be imputed to Ford for jurisdictional analysis purposes, that argument also fails. *See*

Dkt. 17 at 16. Even if the dealerships were agents, which they are not, Plaintiff's claims, as

pleaded, still do not arise out of or relate to Ford's contacts with Florida. In his complaint, Plaintiff

alleges a strict liability claim against Ford, because "[a]t the time of the accident the subject vehicle

was unreasonably dangerous and therefore defective in design, manufacture and/or warnings

including but not limited to . . . [the fact that] [t]he [2010] Ford Edge contained inadequate

warnings about its defective and unreasonably dangerous condition." Dkt. 2 at 2-3. Plaintiff also

alleges a negligence claim against Ford, arguing Ford "breached their duties by negligently

designing, testing, manufacturing, assembling, distributing, warning, marketing, advertising,

promoting, selling, and placing into the stream of commerce the Subject Vehicle such that . . . [t]he subject 2010 Ford Edge contained inadequate warnings about its defective and unreasonably dangerous condition." *Id.* at 4.  Plaintiff does not allege anywhere in his entire complaint that the independent Ford dealerships, as Ford's agents or otherwise, did or did not do anything related to performing Ford's warranty and recall obligations that in any way caused or related to Plaintiff's claims. *See* Dkt. 2.

For the reasons discussed above, Plaintiff has not satisfied the Due Process Clause analysis for specific personal jurisdiction.  Ford's contacts with Florida are not the "but-for" cause of Decedent's injuries for which Plaintiff seeks relief, and Plaintiff's claims do not arise or relate to Ford's contacts with Florida.  Accordingly, this Court lacks specific jurisdiction over Ford pursuant to the Due Process Clause.

**B. General Jurisdiction**

Because the Court found it lacked specific jurisdiction over Ford, it now examines whether it has general jurisdiction.  Again, when analyzing whether it has personal jurisdiction over Ford, the Court must find both that Plaintiff has satisfied the Florida Long-Arm Statute and that the Court's exercise of personal jurisdiction does not run afoul of the Due Process Clause.

*1.  Section 48.193(2) of the Florida Long-Arm Statute*

The Florida Long-Arm Statute contains section 48.193(2), which is satisfied when a plaintiff alleges sufficient facts to show a nonresident defendant "is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise[,]" Fla. Stat. § 48.193(2) (2009).  This section extends to the limits on personal jurisdiction imposed by the Due Process Clause of the Fourteenth Amendment. *See Fraser*, 594 F.3d at 846.  Accordingly, the two requirements for personal jurisdiction—satisfaction of the

Florida Long-Arm Statute and the Due Process Clause—are met so long as the exercise of general jurisdiction comports with the requirements of federal due process. Therefore, the Court addresses both whether Plaintiff has satisfied this section of the Florida Long-Arm Statute and whether the Court has general jurisdiction over Ford together in the Due Process section below.

　　2.　*Due Process*

As noted in the jurisdictional allegations above, Plaintiff's complaint provides examples of multiple business contacts Ford has and has had with the state of Florida and the United States, including Florida, as well as multiple legal contacts Ford has had with Florida, and alleges that the Court can exercise general jurisdiction because of these contacts. *See* Dkt. 2 at 7-9. Again, Ford does not dispute the contacts alleged by Plaintiff; rather, it disagrees about the impact those contacts have on this Court's analysis of general jurisdiction.

*Daimler AG v. Bauman*, 134 S.Ct. 746 (2014), is the United States Supreme Court's most recent decision on general jurisdiction and controls this Court's analysis of general jurisdiction. This Court has previously summarized *Daimler* in *Kinsman v. Florida State University Board of Trustees*, No. 6:15-CV-16-ORL-31KRS, 2015 WL 11110542 (M.D. Fla. Apr. 27, 2015), as follows:

> In *Daimler*, residents of Argentina filed suit in the Northern District of California against Daimler AG, a German public stock company headquartered in Stuttgart. *Daimler AG*, 134 S.Ct. at 750-51. . . . [T]he events at issue in *Daimler* had not occurred in the forum where suit had been brought. The plaintiffs were seeking to hold Daimler AG liable for actions taken in Argentina by its Argentinian subsidiary, Mercedes-Benz Argentina. *Id.* at 751. When the defendant objected on personal jurisdiction grounds, the plaintiffs argued that Daimler AG's American subsidiary – Mercedes-Benz USA, LLC – had sufficient contacts with California to subject Daimler AG to the general jurisdiction of the courts of that state. *Id.* In an 8-1 decision, the Supreme Court concluded that, even assuming (1) that the American subsidiary was subject to general jurisdiction in California and (2) that the American subsidiary's contacts with California could be attributed to Daimler AG, Daimler AG was not itself subject to general jurisdiction in California. *Id.*

Relying in large part on its decision in *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846 (2011), the *Daimler* Court rejected as "unacceptably grasping" the notion that a corporation is subject to general jurisdiction in every state in which it "engages in a substantial, continuous, and systematic course of business." *Daimler* at 760.

> *Goodyear* made clear that only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." 131 S.Ct., at 2853–2854. With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction. Those affiliations have the virtue of being unique – that is, each ordinarily indicates only one place – as well as easily ascertainable. These bases afford plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims.

*Daimler AG* at 760 (some internal citations and quotations omitted).

Rather than solely focusing on the corporation's activities in the forum state, the court said, the general jurisdiction inquiry requires "an appraisal of a corporation's activities in their entirety, nationwide and worldwide." *Id.* at 762 n. 20. The court noted that it was not entirely foreclosing the possibility that a corporation's activities in a forum other than its formal place of incorporation or principal place of business could be "so substantial and of such a nature as to render the corporation at home in that state." *Id.* at 761 n. 19. However, the court stated that such a scenario would constitute "an exceptional case". *Id.*

*Id.* at \*4–\*5.  Since *Daimler*, the Eleventh Circuit has clarified that general jurisdiction is only appropriate over nonresident corporate defendants, if "the corporation's activities in the forum closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business." *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1205 (11th Cir. 2015).

Ford argues *Daimler* dictates that it is not subject to general jurisdiction in Florida because, absent exceptional circumstances that are not present here, a corporation is at home *only* (1) where it is incorporated and (2) where it has its principal place of business.  Dkt. 7 at 1.  Defendant provides "Ford is incorporated in Delaware, and its principal place of business is in Michigan.

Ford's affiliations with Florida are not 'so continuous and systematic as to render [it] essentially at home' in Florida." *Id.* (citing *Daimler*, 134 S.Ct. at 761)

In response, Plaintiff argues *Daimler* is distinguishable from this case for a number of reasons. *See* Dkt. 17 at 7. First, Ford is a U.S. corporation, while Daimler is a foreign corporation. Second, the fatality in this case occurred in Florida, while in *Daimler* no injury occurred in California. Third, Plaintiff's injury was caused by a defective Ford product, while the *Daimler* claim had nothing to do with a Daimler product. Fourth, Decedent was a consumer who was injured using a Ford product, while the *Daimler* victims were not Daimler, MB Argentina, or MBUSA consumers. Plaintiff additionally asserts that "the underlying incident in [*Daimler*] was the intentional criminal conduct [of] Daimler's Argentinian subsidiary, not Daimler, nor its U.S. Subsidiary (which was the claimed connection for California jurisdiction)." *Id.* Plaintiff argues general jurisdiction is supported by the facts of this case "based upon the extensive business, legal and lobbying activities of Ford in Florida which are directly connected to vehicles it designs and produces." *Id.*

The Court disagrees that *Daimler* has no application to the case because Daimler is a foreign corporation. As pointed out by Justice Sotomayor in her concurring opinion, the majority's opinion in *Daimler* "appl[ies] equally to preclude general jurisdiction over a U.S. company that is incorporated and has its principal place of business in another U.S. State." *Daimler*, 134 S.Ct. at 773 n.12 (Sotomayor, J., concurring in judgment). In addition, multiple courts within the Eleventh Circuit have applied *Daimler* to nonresident defendants that are incorporated in and have their principal place of business in a state other than the forum state. *See e.g., Hard Candy, LLC v. Hard Candy Fitness, LLC*, 106 F.Supp.3d 1231, 1235 (S.D. Fla. 2016); *Kinsman*, 2015 WL 11110542 (M.D. Fla. April 27, 2015). Finally, as Ford points out, Plaintiff's primary authority

that it cites to support its argument. *State ex rel. Ford Motor Co. v. McGraw*, No. 15-1149, 2016

WL 2953973 (W. Va. May 18, 2016), does not actually endorse Plaintiff's domestic limitation.

Instead, the West Virginia Supreme Court concluded that the factual record was not fully

developed and remanded for further findings. *See id.* at *16. For these reasons, the Court applies

*Daimler.*

The parties agree that Ford is not incorporated in Florida and that it does not maintain its

principal place of business in Florida. Therefore, this Court can only exercise general jurisdiction

over Ford if its contacts with Florida are significant enough to qualify as an "exceptional case" to

the "at home" standard. This "calls for an appraisal of [Ford's] activities in their entirety,

nationwide and worldwide," because a corporation operating in multiple forums could "scarcely

be deemed at home in all of them." *Id.* at 762 n. 20. To qualify as "at home," Ford must be

"comparable to a domestic enterprise in [Florida]." *Id.* at 758 n.11.

The difficulty of meeting the "exceptional case" standard is illustrated by *Perkins v.*

*Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952), and the facts of *Daimler*. As the Eleventh

Circuit explained in *Carmouche*:

> The only "exceptional" case the Supreme Court has identified in which a court
> exercised general personal jurisdiction over a foreign corporation without
> offending due process is *Perkins v. Benguet Consol. Min. Co.*, 342 U.S. 437, 72
> S.Ct. 413, 96 L.Ed. 485 (1952) . . . . The defendant in *Perkins* was a Philippines
> mining company that ceased its mining operations during the Japanese occupation
> of the Philippines in World War II. *Id.*, 342 U.S. at 448, 72 S.Ct. at 419. The
> president of the company moved to Ohio, where he kept an office and oversaw the
> work of the company. *Id.* The Supreme Court held that Ohio courts could exercise
> general jurisdiction over the company without offending due process. *Id.* The
> Supreme Court later explained that in *Perkins*, "Ohio was the corporation's
> principal, if temporary, place of business," *Keeton v. Hustler Magazine, Inc.*, 465
> U.S. 770, 779 n. 11, 104 S.Ct. 1473, 1481 n. 11, 79 L.Ed.2d 790 (1984), and that
> "[g]iven the wartime circumstances, Ohio could be considered a surrogate for the
> place of incorporation or head office," *Daimler AG,* 134 S.Ct. at 756 n. 8 (internal
> quotation marks and citation omitted).

*Carmouche,*789 F.3d at 1204–05.

Here, Plaintiff has alleged that Ford has many contacts with the state of Florida; however, Plaintiff has not shown that these contacts make Ford "comparable to a domestic enterprise in [Florida.]" *Daimler*, 134 S.Ct. at 758 n.11. The facts alleged by Plaintiff concerning Ford's contacts do not show that Florida is effectively Ford's principal place of business or that it conducts business in Florida in such a way that, when compared with the business it conducts worldwide, it is effectively a Florida enterprise. It is clear from Plaintiff's jurisdictional allegations that Ford conducts a large volume of business in the state of Florida, however, this is not enough to make Ford "at home" in the state of Florida as opposed to the other states in which Ford conducts business. As provided in the facts to which the parties have stipulated, Ford engages in the shipment of vehicles to independently owned and operated Ford dealerships in Florida and to independently owed dealerships in other states in the United States; Ford has business relationships with independently owned Ford dealerships located in Florida and with independently owned dealerships in other states in the United States; and Ford advertises its products, and Florida residents and the residents of other states in the United States may see these advertisements. *See* Dkt. 17, Exhib. B. Accordingly, Plaintiff has not shown that this is an "exceptional case" where Ford is effectively conducting itself as a Florida enterprise, as compared to the way it conducts business in other states and throughout the world. *See Daimler*, 134 S.Ct. at 762 n. 20 (providing that a corporation operating in multiple forums could "scarcely be deemed at home in all of them").

Therefore, because Ford is not incorporated in Florida; Florida is not Ford's principal place of business; and Ford is not conducting business within the state of Florida to such an extent that, when compared to its business operations in the other states, Ford is effectively a Florida enterprise, this Court lacks general jurisdiction over Ford.

### C. Consent to Jurisdiction

In his response, Plaintiff also asserts that Ford's appointment of an agent for service of process in Florida operates as consent to jurisdiction. Dkt. 17 at 16. Appointing an agent for service of process standing alone, however, is not sufficient to establish personal jurisdiction. The cases that have addressed whether section 48.091 of Florida Statutes confers jurisdiction upon a court have also stated that appointment of an agent alone is not sufficient. *See Consol. Dev.*, 216 F.3d at 1293 ("Courts of appeals that have addressed this issue have rejected the argument that appointing a registered agent is sufficient to establish general personal jurisdiction over a corporation."); *Sofrar, S.A. v. Graham Eng'g Corp.*, 35 F.Supp.2d 919, 919 (S.D. Fla. 1999). The exercise of jurisdiction in such cases also must satisfy the Due Process Clause. *Id.* at 920-21. Accordingly, this basis for personal jurisdiction fails.

### V.   PLAINTIFF'S REQUEST TO TRANSFER

In a single paragraph in his response to Ford's motion to dismiss, Plaintiff asks the Court not to dismiss his case if it finds it does not have jurisdiction, but to transfer the case to Ohio[6] instead, asserting that "[i]t would do substantial injustice to dismiss this case because the statute of limitations has run." Dkt. 17 at 17.

Ford opposes this request, arguing that it is procedurally improper, as "all requests for affirmative relief shall be made by a separate motion." Dkt. 25 at 4 (citing *L-3 Commc'ns Corp. v. Sparton Corp.*, No. 6:13-v-1481-ORL-TBS, 2014 WL 2003120, at *4 (M.D. Fla. May 15, 2014), and *Ioselev v. Schilling*, No. 3:10-cv-1091-J-34MCR, 2013 WL 271711, at *5 n.8 (M.D. Fla. Jan. 24, 2013). Ford also argues that a transfer to Ohio in this case is improper, because "Plaintiff has not shown that Ohio would have personal jurisdiction over Ford on his claims[.]" *Id.*

---

[6] Plaintiff does not state whether he is requesting transfer to the Northern or Southern District of Ohio.

As a preliminary matter, the Court agrees that Plaintiff's request to transfer should have been made by separate motion. The Court also notes that it has the power under 28 U.S.C. § 1631 to transfer a case to the jurisdiction where it could have been properly brought at the time it was filed if that court finds it "is in the interest of justice."

Plaintiff asserts that it is in the interest of justice for this Court to transfer his claims to Ohio rather than to dismiss them because the statute of limitations bars him from refiling his claims, *see* Dkt. 17 at 17, but Plaintiff does not provide any citations to legal authority or additional information to support this assertion. Based on what is currently before the Court, the Court is unable to determine whether jurisdiction is proper in Ohio; however, the Court declines to dismiss the case without considering the request to transfer.

Therefore, the Court directs Plaintiff to file *on or before September 14, 2016*, a written memorandum of no more than 10 pages that addresses why jurisdiction is appropriate in the Southern or Northern District of Ohio and the statute of limitations that prevents him from re-filing there. Ford will then have *14 days from the date Plaintiff files his memorandum* to file its written opposition of no more than 10 pages.

Accordingly, the Court defers its decision on Ford's motion to dismiss and Plaintiff's request to transfer until the parties have properly briefed the request to transfer to Ohio.

## VI.  CONCLUSION

The Court finds it lacks personal jurisdiction over Ford; however, it defers its decision on Ford's motion to dismiss until it has had an opportunity to consider the supplemental briefing on Plaintiff's request to transfer to Ohio.

**DONE AND ORDERED** at Tampa, Florida, this 31st day of August, 2016.

SUSAN C. BUCKLEW
United States District Judge