Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

DATE FILED: September 12, 2016
CASE NUMBER: 2015SA332

ADVANCE SHEET HEADNOTE
September 12, 2016

## 2016 CO 57

No. 15SA332, <u>Magill v. Ford Motor Co.</u> — Constitutional Law — Personal Jurisdiction —
General Jurisdiction — Corporations and Business Organizations — Related or
Affiliated Entities.

The supreme court issued a rule to show cause to review the trial court's
conclusion that defendant Ford Motor Company ("Ford") is subject to general personal
jurisdiction in Colorado and that venue was proper in Denver County. The court
concludes that, under <u>Daimler A.G. v. Bauman</u>, 134 S. Ct. 746 (2014), the record does not
support a finding that Ford is "essentially at home" in Colorado.  Therefore, Ford is not
subject to general personal jurisdiction in Colorado. Because the trial court did not
determine whether Ford was subject to specific jurisdiction, the supreme court does not
reach that issue.  The court also holds that maintaining a registered agent in the state
does not convert a foreign corporation to a resident.  Because none of the parties reside
in Denver and the accident did not occur there, venue was not appropriate in Denver
County.

Exhibit

2

## The Supreme Court of the State of Colorado
2 East 14th Avenue • Denver, Colorado 80203

---

### 2016 CO 57

---

### Supreme Court Case No. 15SA332
*Original Proceeding Pursuant to C.A.R. 21*
City and County of Denver District Court Case No. 15CV32019
Honorable Michael J. Vallejos

---

**Plaintiffs:**

John Magill and Suzanna Magill,

v.

**Defendants:**

Ford Motor Company; Mark Polunci; and Does 1 through 20, inclusive.

---

### Rule Made Absolute
*en banc*
September 12, 2016

---

**Attorneys for Plaintiffs:**
Hale Westfall, LLP
Richard A. Westfall
Peter J. Krumholz
 *Denver, Colorado*

**Attorneys for Defendants:**
Wheeler Trigg O'Donnell, LLP
Edward C. Stewart
Theresa R. Wardon
Marissa S. Ronk
 *Denver, Colorado*

Hogan Lovells US LLP
Jessica Ellsworth
Sean Marotta
 *Washington, D.C.*

**Attorneys for Amicus Curiae The Chamber of Commerce of the United States of America:**
Kittredge LLC
Daniel D. Domenico
 *Denver, Colorado*

MRDLaw
Michael Francisco
 *Denver, Colorado*

**Attorneys for Amicus Curiae The Colorado Trial Lawyers Association:**
Ollanik Law, LLC
Stuart Ollanik
 *Boulder, Colorado*

Shoenwald & Thompson LLC
Julia T. Thompson
 *Denver, Colorado*

**Attorneys for Amicus Curiae The Center for Auto Safety and The Attorneys Information Exchange Group:**
Ogborn Mihm, LLP
Thomas Neville
 *Denver, Colorado*

Anapol Weiss
Larry E. Coben
 *Scottsdale, Arizona*

**CHIEF JUSTICE RICE** delivered the Opinion of the Court.

¶1      We issued a rule to show cause in this case to review the trial court's conclusion that defendant Ford Motor Company ("Ford") is subject to general personal jurisdiction in Colorado, despite the U.S. Supreme Court's recent decision in Daimler A.G. v. Bauman, 134 S. Ct. 746 (2014).  We conclude that the record does not support a finding that Ford is "essentially at home" in Colorado, and therefore, Ford is not subject to general personal jurisdiction here. Because the trial court did not determine whether Ford was subject to specific jurisdiction, we do not reach that issue.

¶2      We also review the trial court's conclusion that venue was proper in Denver County because Ford has a registered agent there.   We hold that maintaining a registered agent in the state does not convert a foreign corporation to a resident. Therefore, because none of the parties reside in Denver and the accident did not occur there, we conclude that venue is not appropriate in Denver County.

¶3      Accordingly, we make our rule to show cause absolute, and we remand with instructions for the trial court to transfer the case to an appropriate venue.  A trial court in a proper venue must then determine whether Ford is subject to specific jurisdiction.

## I. Facts and Procedural History

¶4      This case arises from a car accident that occurred on September 25, 2013, in Douglas County, Colorado.   Plaintiff John Scott Magill was driving his 2007 Ford Fusion when it collided with a vehicle driven by defendant Mark Polunci.   Magill suffered severe injuries in the collision, including a traumatic brain injury and spinal injuries.  Magill and his wife, Suzanna Magill, filed a lawsuit in Denver District Court against Polunci, Ford, and other defendants to recover for his injuries.  The Magills

claim that their Fusion had defective seat and restraint systems that caused Mr. Magill's serious and permanent injuries. They contend that Ford, as the manufacturer of the Fusion, is liable for their injuries based on three causes of action: (1) strict liability, (2) negligence or negligence per se, and (3) loss of consortium. Ford filed a C.R.C.P. 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, to Transfer Venue Pursuant to C.R.C.P. 98(e). Polunci also filed a motion to change venue.

¶5      The following undisputed facts are relevant to the jurisdiction and venue questions presented: The accident underlying this case occurred in Douglas County, Colorado. The Magills reside in Douglas County. Mr. Polunci resides in El Paso County. Ford is a Delaware corporation with its principal place of business in Michigan. Ford has a registered agent in Denver County. Ford markets and sells cars throughout the country, including Colorado, through franchised dealerships. Ford does not manufacture cars in Colorado, but it maintains several offices and businesses in the state, including the Ford Motor Company Service School and an office for Ford Motor Credit Co., LLC.

¶6      The trial court denied both motions to change venue. It observed that "Ford is a foreign corporation whose registered agent is located in Denver County and . . . [was] served there." Consequently, it concluded that "venue is proper in Denver County under the provision of Rule 98(c)(1) that allows an action to be brought in the county in which at least one defendant resides."

¶7      Ford also moved to dismiss the case for lack of personal jurisdiction. The company argued that it is not subject to general personal jurisdiction because it is not

"at home" in Colorado.  Ford argued that it was not subject to specific personal jurisdiction because the car accident did not arise out of its contacts with Colorado.  The trial court concluded that the Magills "made a prima facie showing that Ford is at 'home' in Colorado" and that Ford's "continuous and systematic affiliations" with Colorado were sufficient to subject Ford to general personal jurisdiction in Colorado.

¶8     Ford's petition presents the following issues: (1) whether the trial court erred when it concluded that it had general personal jurisdiction over Ford and (2) whether the trial court erred by concluding that venue was proper in Denver.

## II.  Original Jurisdiction

¶9     "Original relief pursuant to C.A.R. 21 is an extraordinary remedy that is limited both in purpose and availability."  Dwyer v. State, 2015 CO 58, ¶ 4, 357 P.3d 185, 187 (quoting People v Kailey, 2014 CO 50, ¶ 9, 333 P.3d 89, 92).  We generally elect to hear cases under C.A.R. 21 "that raise issues of first impression and that are of significant public importance."  Id., 357 P.3d at 187–88.  We often elect to hear challenges to "the exercise of personal jurisdiction by district courts over out-of-state defendants" because they "raise[] the question whether it is unfair to force such a party to defend here at all." Keefe v. Kirschenbaum & Kirschenbaum, P.C., 40 P.3d 1267, 1270 (Colo. 2002).  This case satisfies these criteria.  Since the U.S. Supreme Court's decision in Daimler, we have not yet considered the scope of general personal jurisdiction for nonresident corporate defendants who do business in Colorado.  This issue not only concerns the rights of the parties in this case but also affects the rights of future litigants.

¶10    We also hear cases under C.A.R. 21 that raise "issues involving venue" because such issues "directly affect the trial court's jurisdiction and authority to proceed with a case" and "review of a venue determination serves to avoid the delay and expense involved in re-trial should this court deem venue improper." Hagan v. Farmers Ins. Exch., 2015 CO 6, ¶13, 342 P.3d 427, 432. Thus, original review of both the personal jurisdiction question and the venue question is appropriate in this case.

### III.   Standard of Review

¶11    Interpreting the scope of general personal jurisdiction under Daimler presents a question of law, which we review de novo. See In re Marriage of Malwitz, 99 P.3d 56, 59 (Colo. 2004). We also review de novo whether the Magills established the prima facie case of personal jurisdiction necessary to defeat Ford's 12(b)(2) motion. Archangel Diamond Corp. v. Lukoil, 123 P.3d 1187, 1192 (Colo. 2005), as modified on denial of reh'g (Dec. 19, 2005) (noting that, when a trial court denies a 12(b)(2) motion based on documentary evidence alone, "the plaintiff need only demonstrate a prima facie showing of personal jurisdiction to defeat the motion").

¶12    We review a trial court's decision on a motion to change venue for an abuse of discretion. Hagan, ¶¶ 15–16, 342 P.3d at 432 (citing Sampson v. Dist. Ct., 590 P.2d 958, 959 (Colo. 1979)). A trial court abuses its discretion when it proceeds to hear a case where venue is improper. Id.; see also Denver Air Ctr. v. Dist. Ct., 839 P.2d 1182, 1185 (Colo. 1992) ("[W]hen a party requests a change of venue upon a ground which entitles it to the change as a matter of right the trial court loses all jurisdiction except to order the change.").

## IV.  Analysis

¶13     We begin by reviewing the law of personal jurisdiction and then conclude that,
under <u>Daimler</u>, the trial court lacks general personal jurisdiction over Ford.  We note,
however, that Ford may be subject to specific personal jurisdiction in Colorado.  But
because the trial court did not make any findings regarding specific jurisdiction, we
decline to reach that issue.  Next, we address the trial court's holding that venue is
appropriate in Denver County.  We conclude that maintaining a registered agent does
not convert a foreign company to a resident company.  Therefore, under our rule in
<u>Denver Air Center</u>, venue is not appropriate in Denver.  839 P.2d at 1185.

### A.  Personal Jurisdiction

¶14     To exercise jurisdiction over a nonresident defendant, a Colorado court must
comply with Colorado's long-arm statute and constitutional due process.  <u>Archangel
Diamond Corp.</u>, 123 P.3d at 1193.  Colorado's long-arm statute confers "the maximum
jurisdiction permitted by the due process clause of the United States and Colorado
constitutions."  <u>Id.</u> (citing <u>Keefe</u>, 40 P.3d at 1270); <u>see also</u> U.S. Const. amend. XIV; Colo.
Const. art. 2, § 25; § 13-1-124, C.R.S. (2016).  Therefore, we engage in a constitutional due
process analysis to determine whether a Colorado court has jurisdiction over an out-of-
state defendant.

¶15     The Fourteenth Amendment's due process clause governs the outer boundaries
of a state's authority to proceed against nonresident defendants.  <u>Shaffer v. Heitner</u>,
433 U.S. 186, 207 (1977).  In <u>International Shoe Co. v. Washington</u>, the U.S. Supreme
Court held that a state may exercise personal jurisdiction over a nonresident defendant

7

if the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). This relationship-based approach to personal jurisdiction gave rise to two distinct categories of jurisdiction: general jurisdiction and specific jurisdiction.   Daimler, 134 S. Ct. at 754; Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 923–24 (2011).  We now address these categories in greater detail.

### 1. General Jurisdiction

¶16     General jurisdiction, or all-purpose jurisdiction, permits a court to exercise jurisdiction over a defendant for any and all causes of action arising from any of the defendant's activities, even if those activities occurred outside the forum state.  Daimler, 134 S. Ct. at 754 (citing Int'l Shoe, 326 U.S. at 318, and Goodyear, 564 U.S. at 919). However, "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there."  Daimler, 134 S. Ct. at 760.  For a corporate defendant, the paradigmatic fora for general jurisdiction are the corporation's place of incorporation and principal place of business.  Id. at 760–61 (citing Goodyear, 564 U.S. at 924).  These places have the benefit of being unique and easily ascertainable, and a corporation may reasonably anticipate being haled into court in either place.  Id.  Thus, general jurisdiction guarantees plaintiffs at least one forum to file any suit against a corporation.  Id.

¶17     A state may also exercise general jurisdiction over a nonresident corporate defendant whose affiliations with the forum state are "so 'continuous and systematic' as

to render them essentially at home in the forum State." Id. at 754 (quoting Goodyear, 564 U.S. at 919). A nonresident defendant's contacts with the state will rarely justify exercising general jurisdiction. See id. at 757-58. "Perkins v. Benguet [Consolidated] Mining Co.[, 342 U.S. 437 (1952),] remains the textbook case of general jurisdiction appropriately exercised over a foreign corporation that has not consented to suit in the forum." Daimler, 134 S. Ct. at 755-56 (quoting Goodyear, 564 U.S. at 927–28). In Perkins, the defendant company was incorporated in the Philippines and operated gold and silver mines there. 342 U.S. at 448. During World War II, the company's president moved to Ohio, where he maintained an office with the company's files and oversaw the company's activities. Id. at 447-48. The U.S. Supreme Court held that the company had temporarily moved its principal place of business to Ohio, and therefore, the court in Ohio did not offend due process by exercising general jurisdiction over the company. Daimler, 134 S. Ct. at 756 (citing Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 780 n.11 (1984)).

¶18     Recently, in Daimler, the U.S. Supreme Court clarified the law of general personal jurisdiction as applied to nonresident, corporate defendants. 134 S. Ct. at 746. The Court considered whether California had jurisdiction over a claim "brought by foreign plaintiffs against a foreign defendant based on events occurring entirely out of the United States." Id. at 750. The plaintiffs argued that the California court had jurisdiction over the corporate defendant, Daimler, based on one of its subsidiary's contacts with the state. Id. at 751. The Court assumed that the subsidiary, MBUSA, was "at home" in California. Id. at 760. It also assumed that MBUSA's contacts with

9

California—including a regional office and other facilities in California, along with significant sales in the state—could be imputed to Daimler. Id. Nevertheless, the Court concluded that, even though MBUSA was "at home" in California and all of MBUSA's contacts could be imputed to Daimler, there was "no basis to subject Daimler to general jurisdiction in California, for Daimler's slim contacts with the State hardly render it at home there." Id. The Court recognized that even if a company conducts significant business in a state, if that business represents a relatively small portion of the company's national or international reach, then the company cannot be considered at home in the state. Id. at 760–61, 761 n.19, 762 n.20. Therefore, because Daimler's contacts with California—while independently substantial—were only a small portion of its overall business, Daimler could not be considered "at home" in California.[1] Id. at 762.

¶19    In the case before us, the trial court concluded that Daimler did not control and that exercising general jurisdiction over Ford was appropriate. First, it distinguished this case by noting that Daimler involved international disputes with foreign plaintiffs. But Daimler cannot be disposed of so easily. Whether a nonresident corporate defendant is a resident of another country or another state is irrelevant to the general jurisdiction inquiry. Goodyear, 564 U.S. at 919 (recognizing that the test for exercising

---

[1] The Tenth Circuit recently noted that Daimler did not create a new rule for general personal jurisdiction but merely "reaffirmed the Goodyear standard." Am. Fidelity Assur. Co. v. Bank of New York Mellon, 810 F.3d 1234, 1241 (10th Cir. 2016) (petition for certiorari filed). Whether Daimler amounted to a sea change in personal jurisdiction jurisprudence or merely reaffirmed existing law is beyond the scope of this case. We need only determine whether Ford's contacts supported the conclusion that Ford is at home in Colorado. See Daimler, 134 S. Ct. at 761; Goodyear, 564 U.S. at 919.

general jurisdiction is the same for all "foreign (sister-state or foreign-country) corporations").

¶20    Next, the trial court concluded that, "unlike in <u>Daimler</u>, Ford has more than 'slim contacts' with Colorado." The trial court relied on Ford's "aggressive" marketing and sales through over thirty dealerships in Colorado. It also noted that Ford maintains offices and businesses in Colorado, has a registered agent in Colorado, and trains and certifies mechanics to work with Colorado consumers. The trial court added that "Ford has actively litigated, as both a plaintiff and defendant[,] in cases in Colorado." These contacts, however, pale in comparison to the significant contacts that were deemed "slim" in <u>Daimler</u>.

¶21    In <u>Daimler</u>, the Court imputed MBUSA's substantial contacts to Daimler and nevertheless determined that those contacts were "slim" and therefore insufficient to support general jurisdiction. 134 S. Ct. at 760. These "slim" contacts included a regional office and other facilities in the state. <u>Id.</u> at 752. MBUSA was also the largest supplier of luxury vehicles in California—"over 10% of all sales of new vehicles in the United States" took place in California and "2.4% of Daimler's worldwide sales" were attributable to California. <u>Id.</u> A comparison between Ford's contacts with Colorado and those in <u>Daimler</u>—which were deemed insufficient to support general jurisdiction—reveals that Ford's contacts with Colorado do not subject it to general jurisdiction here.

¶22    Under <u>Goodyear</u> and <u>Daimler</u>, the key inquiry is whether Ford is "at home" in Colorado. <u>Daimler</u>, 134 S. Ct. at 761 (citing <u>Goodyear</u>, 564 U.S. at 919). Determining

that a corporation is "at home" simply because it does business in Colorado would be "unacceptably grasping." Id. at 760–61. "General jurisdiction instead calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be deemed at home in all of them." Id. at 762 n.20; accord Presby Patent Tr. v. Infiltrator Sys., Inc., Civil No. 14-cv-542-JL, 2015 WL 3506517, at *4–5 (D.N.H. June 3, 2015) ("Under Daimler, then, it is no longer enough for the defendant to have 'continuous and systematic' contacts with the forum state . . . . Daimler requires at the very least that a defendant have systematic and continuous contacts with the forum that sets the forum apart from other states where [the] defendant may conduct business—contacts that render the forum in some manner equivalent to a principal place of business." (citations omitted)).

¶23     Under Daimler, the record in this case does not support a finding that general jurisdiction over Ford is appropriate. As was true of the defendant in Daimler, Ford conducts business throughout the country, but the Magills failed to present any evidence that Ford's contacts with Colorado are somehow different or more substantial than its contacts with other states where it sells cars. Nothing about Ford's contacts with Colorado suggest that it is "at home" here. Moreover, no special circumstances— such as temporarily relocating the company's principal place of business during wartime—indicate that this is an "exceptional case" that would render Ford at home in Colorado. Daimler, 134 S. Ct. at 761 n.19 (citing Perkins, 342 U.S. 437, as an example of an "exceptional case" where "a corporation's operations in a forum other than its

formal place of incorporation or principal place of business may be so substantial as to render the corporation at home in that State").

¶24     Because Ford is incorporated in Delaware and has its principal place of business in Michigan, the Magills have not demonstrated that Ford is "essentially at home" in Colorado.  Accordingly, we conclude that the trial court erred by exercising general jurisdiction over Ford.  However, our conclusion that Ford is not subject to general personal jurisdiction does not compel the conclusion that the Magills have no recourse in Colorado; Ford may be subject to specific personal jurisdiction.

## 2. Specific Jurisdiction

¶25     "Specific jurisdiction has become the centerpiece of modern jurisdiction theory, while general jurisdiction [has played] a reduced role." Daimler, 134 S. Ct. at 755 (citing Goodyear, 564 U.S. at 925).  A corporation's "continuous activity of some sorts within a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity." Daimler, 134 S. Ct. at 757 (quoting Int'l Shoe, 326 U.S. at 318).  But a state may still exercise jurisdiction over a nonresident corporate defendant if the cause of action arises out of the defendant's in-state activities. Id. at 754 (citing Int'l Shoe, 326 U.S. at 317).  Some activities—such as having agency relationships within the forum state or placing products into the stream of commerce—may support a finding of specific, but not general, jurisdiction. See, e.g., Daimler, 134 S. Ct. at 759 n.13 ("Agency relationships, we have recognized, may be relevant to the existence of specific jurisdiction." (citing Int'l Shoe, 326 U.S. 310)); Goodyear, 564 U.S. at 927 ("Flow of a manufacturer's products into the forum, we have explained, may bolster an affiliation

13

germane to <u>specific</u> jurisdiction." (citing <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980)).

¶26    Here, after concluding that Ford was subject to general jurisdiction, the trial court found "it unnecessary for it to review Ford's arguments as to whether the Magills [had] established specific jurisdiction."   Because we reverse the trial court's holding regarding general jurisdiction, we now remand the case for the trial court to reevaluate Ford's connections with Colorado and to this case to determine whether it has specific jurisdiction over Ford.

## B. Venue

¶27    We now turn to Ford's contention that the trial court erred by concluding that venue is proper in Denver County.  The trial court concluded that, because Ford has a registered agent in Denver, the company resides there.  Therefore, it held that venue was proper under C.R.C.P. 98(c)(1).  We disagree.

¶28    For a tort action, C.R.C.P. 98(c) dictates the proper location for venue:

> [A]n action shall be tried in the county in which the defendants, or any of them, may reside at the commencement of the action, or in the county where the plaintiff resides when service is made on the defendant in such county; or if the defendant is a nonresident of this state, the same may be tried in any county in which the defendant may be found in this state, or in the county designated in the complaint . . . .

The rule also states that a tort action may "be tried in the county where the tort was committed." C.R.C.P. 98(c)(5).  "A harmonious construction of the rule requires that, when at least one defendant is a Colorado resident, [a] plaintiff may not designate a county that is unrelated to either the defendant's county of residence, the plaintiff's

14

county of residence, or the county in which a tort occurred." Denver Air Ctr., 839 P.2d

at 1185.

¶29     The trial court concluded that Ford resides in Denver because its registered agent

is located there.  To bolster the trial court's holding, the Magills cite a litany of cases

from other states where the court concluded that a corporation "resided" where its

registered agent was located.  However, the decisions in all of these cases rely on state

statutes or rules.[2]

_____

[2] See WBC Holdings, Inc. v. Thornton, 443 S.E.2d 686, 687 (Ga. App. 1994) (following
the state's corporate code that defined venue for foreign corporations); Bucklew v. G.D.
Searle & Co., 562 N.E.2d 186, 189 (Ill. 1990) (citing a state statute that stated that a
foreign corporation "is a resident of any county in which it has its registered office");
Am. Family Ins. Co. v. Ford Motor Co., 857 N.E.2d 971, 975 (Ind. 2006) (determining
that under Indiana's trial rules and business code, venue was proper where the
defendant's registered office was located); State ex rel. Rothermich v. Gallagher, 816
S.W.2d 194, 198 (Mo. 1991) (noting that the statutory definition of residence for a
corporation was "the county where its registered office is maintained"); Moore Golf,
Inc. v. Shambley Wrecking Contractors, Inc., 206 S.E.2d 789, 790 (N.C. App. 1974)
(addressing a state statute that defined residence for a domestic corporation as the place
"where the registered office of the corporation is located"); Carolina Cas. Ins. Co. v.
Belford Trucking Co., 280 A.2d 848, 850 (N.J. Super. Ct. Ch. Div. 1971), aff'd sub nom.
Carolina Cas. Ins. Co. v. Belford Trucking Co., 298 A.2d 288 (N.J. Super. Ct. App. Div.
1972) (citing a state rule instructing that a corporate defendant is a resident of the
county where its registered agent is located); Gardiner v. Galles Chevrolet Co., 2007-
NMSC-052, 168 P.3d 116, 118 (relying on a state statute that permitted venue "where the
statutory agent designated by the foreign corporation resides"); Shetty v. Volvo Cars of
N. Am., LLC, 38 A.D.3d 202, 202–03 (N.Y. App. Div. 2007) (stating that "a foreign
corporation's designation of the location of its office . . . constitutes a designation of its
residence" under state procedural rules, but not discussing whether the location of a
registered agent affects venue); Cent. & S. Freight Lines, Inc. v. Hatley, 614 S.W.2d 864,
866 (Tex. Civ. App. 1981) ("A Texas corporation for venue purposes is a resident of the
county where its designated registered office and agent is located." (citing Ward v.
Fairway Operating Co., 364 S.W.2d 194, 195 (Tex. 1963) (construing portions of the
Texas Business Corporation Act as "legislative authorization . . . that the place of its
designated registered office and agent shall constitute a statutory place of residence"))).

¶30    Our own constitution, statutes, and rules impose no such requirement. Colorado's constitution requires foreign corporations to have "one or more known places of business, and an authorized agent or agents in the same, upon whom process may be served."  Colo. Const. art. XV, § 10.   Nothing in this language suggests that complying with the constitutional requirement to maintain a registered agent converts a nonresident corporate defendant into a resident.  See id.  On the contrary, the language recognizes that, even though a foreign corporation must maintain a registered agent to receive service, the corporation is still considered "foreign."  Id.   No other statutes or rules address the effect of a corporation's registered agent on the corporation's residence.   Therefore, Ford's maintenance of a registered agent in Denver does not convert it into a Denver resident.

¶31    A straightforward application of the Denver Air Center rule reveals that venue is not proper in Denver County.  See 839 P.2d at 1185.   Under Denver Air Center, "when at least one defendant is a Colorado resident, plaintiff may not designate a county that is unrelated to either the defendant's county of residence, the plaintiff's county of residence, or the county in which a tort occurred."  Id. at 1185.  The Magills reside in Douglas County, Mr. Polunci resides in El Paso County, and, as we have established, Ford is a nonresident defendant.  The accident central to this case occurred in Douglas County.  Therefore, venue in this case is only proper in either Douglas County or El Paso County.

## V.  Conclusion

¶32      Because the record does not support the trial court's conclusion that Ford may be subject to general personal jurisdiction in Colorado, we reverse the trial court's holding on this issue. We also reverse the trial court's holding that venue is proper in Denver County.  Accordingly, we make the rule to show cause absolute.  Because a court "loses all jurisdiction except to order a change [in venue]" when venue is improper, id., we remand with instructions for the trial court to transfer the case to an appropriate venue. A trial court in a proper venue must then determine whether Ford is subject to specific jurisdiction.