# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

HARRY and TAMMY TARVER, )
individually and as personal representatives )
of the ESTATE OF TRAVIS SCOTT )
TARVER, deceased, )
)
                Plaintiffs, )
)
   v. ) Case No. CIV-16-548-D
)
FORD MOTOR COMPANY, a )
Delaware corporation; TRW VEHICLE )
SAFETY SYSTEMS, INC., )
)
                Defendants. )

## ORDER

Before the Court are Defendants' Motions to Dismiss [Doc. Nos. 10, 11], to which Plaintiffs have filed their responses in opposition [Doc. Nos. 16, 18]. Defendant Ford Motor Company also filed a Supplemental Brief in support of its motion [Doc. No. 41]. Plaintiffs, moreover, seek leave to conduct jurisdictional discovery with respect to the issues raised in Defendants' motions [Doc. Nos. 19, 21]. The matter is fully briefed and at issue.

## BACKGROUND

Plaintiff's son, Travis, owned a 2002 Ford F-150 pickup truck. On November 10, 2014, while driving on Oklahoma State Highway 270, he came upon an 18-wheeler truck stopped in the highway. Travis attempted to go around

the truck and lost control of his vehicle. The truck began to roll over, during which the seat broke from the floor and the seatbelt was torn, causing Travis to be ejected from the vehicle. As a result, Travis was killed.[1]

Plaintiffs filed the present suit, individually and as personal representatives of the deceased, against Ford Motor Company (the truck's manufacturer/designer) and TRW Vehicle Safety Systems, Inc. (the manufacture/designer of the seatbelt system) under theories of products liability and negligence. Generally, Plaintiffs alleged the truck at issue was defective at the time it was manufactured by Ford and unreasonably dangerous to any person who might have been reasonably affected by it, including the decedent. Plaintiff also alleged that TRW was jointly responsible with Ford for placing the alleged defective seatbelt system in the stream of commerce. Defendants timely removed Plaintiffs' action to this Court.

Defendants argue they are not subject to personal jurisdiction in Oklahoma because they are not "at home" in Oklahoma and have no substantial contacts with the state. Plaintiffs contend Defendant's respective business activities leading up to the accident render them subject to personal jurisdiction.

---

[1] In the absence of an evidentiary hearing on Defendants' respective motions, the Court accepts as true all well-pled allegations in the Complaint. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). All factual disputes are resolved in Plaintiffs' favor. *Id.*; *see also AST Sports Science, Inc. v. CFL Distrib. Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008). The Court, accordingly, has stated the above facts in that light.

## STANDARD OF DECISION

A plaintiff bears the burden to establish personal jurisdiction over each defendant named in the action. *Rockwood Select Asset Fund XI (6)–1, LLC v. Devine, Millimet & Branch*, 750 F.3d 1178, 1179-80 (10th Cir. 2014); *OMI Holdings v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998). This burden is light in the preliminary stages of litigation. *AST Sports Science*, 514 F.3d at 1056; *Wenz*, 55 F.3d at 1505. When there has been no evidentiary hearing, a plaintiff must only present competent proof in the form of affidavits and other written materials that, if true, would establish a prima facie showing that jurisdiction is proper. *Id*. "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" *OMI Holdings*, 149 F.3d at 1091 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985); *Rambo v. American Southern Ins. Co.*, 839 F.2d 1415, 1419 n. 6 (10th Cir. 1988)).

## DISCUSSION

### I.   FORD MOTOR COMPANY

Relying principally on the recent Supreme Court decisions in *Daimler AG v. Bauman*, __ U.S. __, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014) and *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011), Ford contends it is

not subject to personal jurisdiction in Oklahoma because it is not "at home" in Oklahoma and the suit does not arise from Ford's contacts with Oklahoma. Ford's Mot. at 1. To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show jurisdiction is proper under the laws of the forum state and the exercise of jurisdiction does not offend due process. *Soma Medical Intern. v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999). Oklahoma's long-arm statute, 12 OKLA. STAT. § 2004(F), provides that "[a] court of this state may exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States." The long-arm statute is coextensive with the constitutional limitations imposed by the Due Process Clause. *Rambo*, 839 F.2d at 1416. Therefore, if jurisdiction is consistent with the Due Process Clause, Oklahoma's long arm statute authorizes jurisdiction over a nonresident defendant.

### A. General Jurisdiction

Personal jurisdiction may either be general or specific. A court may not exercise general personal jurisdiction over a nonresident defendant unless the defendant has "continuous and systematic" business contacts with the forum state. *Newsome v. Gallacher*, 722 F.3d 1257, 1264 (10th Cir. 2013); *Lively v. IJAM, Inc.*, 2005 OK CIV APP 29 ¶ 26, 114 P.3d 487, 494. The Supreme Court recently reiterated this standard in *Daimler*, wherein it stated general jurisdiction refers to a

court's power to hear claims against a nonresident when its "affiliations with the State are so continuous and systematic' as to render [it] essentially at home in the forum state." *Daimler*, 134 S.Ct. at 751 (quoting *Goodyear*, 564 U.S. at 919).[2] The *Daimler* Court rejected a formulation of general jurisdiction that would permit the exercise of jurisdiction over a defendant "in every State in which a corporation engages in a substantial, continuous, and systematic course of business" as "unacceptably grasping." *Id*. at 761. Rather, the Court reminded the parties that general jurisdiction has increasingly played a "reduced role," *id*. at 755, 757-58, and "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Id*. at 760.[3]

In assessing contacts with a forum for purposes of general jurisdiction, the Tenth Circuit considers such factors as: "(1) whether the corporation solicits

---

[2] As the Tenth Circuit recognized, "[t]he *Goodyear* standard was not new; it summarized a longstanding jurisdictional rule." *American Fidelity Assur. Co. v. Bank of New York Mellon*, 810 F.3d 1234, 1238 (10th Cir. 2016) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945)).

[3] In the corporate context, such affiliations would be the defendant's place of incorporation and principal place of business. *Daimler*, 134 S.Ct. at 760. "Those affiliations have the virtue of being unique – that is, each ordinarily indicates only one place – as well as easily ascertainable. ... These bases afford plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims." *Id*. (citations omitted). Although the *Daimler* Court emphasized that a corporation may not be subject to general jurisdiction *only* where it is incorporated or has its principal place of business, it rejected a finding of jurisdiction in *every* state where a corporation engaged in a "substantial, continuous, and systematic course of business." *Id*. at 761.

business in the State through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation." *Trierweiler v. Croxton and Trench Holding Corp.*, 90 F.3d 1523, 1533 (10th Cir. 1996).[4] To this end, a court must appraise "a corporation's activities in their entirety, nationwide and worldwide," because "[a] corporation that operates in many places can scarcely be deemed at home in all of them." *Daimler*, 134 S.Ct. at 762, n. 20 (citations omitted). "Where a court has general jurisdiction over a defendant, that defendant may be called into that court to answer for any alleged wrong, committed in any place, no matter how unrelated to the defendant's contacts with the forum." *American Fidelity Assur. Co. v. Bank of New York Mellon*, 810 F.3d 1234, 1238 (10th Cir. 2016) (quoting *Abelesz v. OTP Bank*, 692 F.3d 638, 654 (7th Cir. 2012)).

Plaintiffs cite several "commonsense observations" in support of their argument that general jurisdiction exists over Ford: (1) Ford placed the subject vehicle into the stream of commerce via one of its many dealerships; (2) Ford maintains indemnity agreements with said dealerships under which it agrees to

---

[4] Although under *Daimler*, the weight of these factors appears to have been greatly diminished, they remain relevant, albeit not dispositive, to a court's inquiry in deciding whether general jurisdiction has been established.

assume the dealership's defense and pay any verdict arising from a products liability action; (3) Ford provides a warranty on its vehicles, thereby maintaining an ongoing contractual relationship with every dealership in the nation; and (4) Ford finances customer's purchases of its vehicles, thereby subjecting itself to the laws of the particular state and availing itself of the same. *See* Pl. Resp. Br. at 3-4 [Doc. No. 18]. In addition, Plaintiffs note there are forty-six (46) Ford dealerships in Oklahoma, Ford has maintained its corporate registration with the Oklahoma Secretary of State since 1920, and Ford voluntary subjects itself to the jurisdiction of Oklahoma courts when it files suit to collect unpaid debts. *Id*. at 4.

Applying *Daimler* to the facts of this case, the Court finds it does not have general jurisdiction over Ford. Plaintiffs' arguments rest on the notion that Ford's "continuous and systematic" contacts with Oklahoma confer general jurisdiction. However, as noted above, *Daimler* specifically rejected the concept that a business organization is "at home" in a given state merely because it does significant business there, finding such a conclusion "unacceptably grasping." *Daimler*, 134 S.Ct. at 761. Ford is a Delaware corporation with its principal place of business in Michigan. *See* Petition at ¶ 1; Ford's Mot. at 3, Ex. 1. It is "at home" in either of those two states, but not Oklahoma, and outside of their allegations that Ford does significant business in Oklahoma, Plaintiffs have not alleged any facts that would

suggest that Ford has such continuous and systematic contacts with Oklahoma as to render it "at home" in this forum.

In *Daimler*, the Supreme Court noted that in "exceptional cases," a corporation's operations in a forum other than its place of incorporation or principal place of business may be so substantial as to render the corporation "at home" in that state. *Id*. at 761 n. 19. Although the Court did not define what constituted an "exceptional case," it referenced a previous decision, *Perkins v. Benguet Consol. Mining Co*., 342 U.S. 437 (1952). In *Perkins*, the Court held that a mining company based in the Philippines was subject to general personal jurisdiction in Ohio because its president directed all of the company's activities from Ohio. *Id*. at 448. The *Daimler* Court noted that *Perkins* was an "exceptional case" because the defendant's mining operations were halted by Japanese wartime occupation of the Philippines. "Given the wartime circumstances," the Court noted, "Ohio could be considered 'a surrogate for the place of incorporation or head office.'" *Daimler*, 134 S.Ct. at 756 n. 8 (citations omitted). Here, Plaintiffs allege no such "exceptional circumstances" to support their argument that general jurisdiction exists over Ford. Accordingly, the Court finds that it does not have general personal jurisdiction over Ford in Oklahoma.

## B. Specific Jurisdiction

A specific jurisdiction analysis involves a two-step inquiry. First, a court must consider whether the defendant's conduct and connection with the forum are such that it should reasonably anticipate being haled into court there. Second, if the defendant's actions create sufficient minimum contacts, the court must then consider whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice. *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1065 (10th Cir. 2007). "In the tort context, [courts] generally consider 'whether the nonresident defendant 'purposefully directed' its activities at the forum state.'" *Anzures v. Flagship Restaurant Group*, 819 F.3d 1277, 1280 (10th Cir. 2016) (quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008)). In this regard:

> [P]urposeful direction exists when there is "an intentional action ... expressly aimed at the forum state ... with [the] knowledge that the brunt of the injury would be felt in the forum state."... In addition, a plaintiff's injuries must "'arise out of' [the] defendant's forum-related activities."... And in that regard, "[f]or a State to exercise jurisdiction consistent with due process, the defendant's *suit-related* conduct must create a substantial connection with the forum State."... Significantly, the relationship between a defendant and the forum State "must arise out of contacts that 'the defendant *himself* ' creates with the forum State," and those contacts must be "with the forum State itself, not the defendant's contacts with persons who reside there," such as a plaintiff.

*Anzures*, 819 F.3d at 1280 (citations omitted; paraphrasing and emphasis in original). Such contacts cannot be random, fortuitous or attenuated. *See id.*; *see*

9

*also OMI Holdings*, 149 F.3d at 1094. The plaintiff cannot be the only link between the defendant and the forum. *Walden v. Fiore*, __ U.S. __, 134 S.Ct. 1115, 1122, 188 L.Ed.2d 12 (2014). Whether a nonresident's activities in the forum are sufficient to confer personal jurisdiction depends on "the totality of facts and circumstances." *Premier Corp. v. Newsom*, 620 F.2d 219, 222 (10th Cir. 1980); *see also Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 169 (2d Cir. 2015) ("[W]e evaluate the quality and nature of the defendant's contacts with the forum state under a totality of the circumstances test.") (citation omitted).

The Tenth Circuit has endorsed a three-pronged analysis for use when examining whether a nonresident defendant has sufficient minimum contacts with the forum to satisfy constitutional requirements: (1) the nonresident must do some act or consummate some transaction with the forum or perform some act by which it purposefully avails itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable. *Rambo*, 839 F.2d at 1419 n. 6.

Plaintiffs maintain they can establish purposeful availment by Ford based on the "stream of commerce" theory. Pl. Resp. Br. at 4-8 [Doc. No. 18]. The stream of commerce theory refers to "the movement of goods from manufacturers through distributors to consumers," ending in the forum state. *J. McIntyre Mach., Ltd. v.*

*Nicastro*, 564 U.S. 873, 881 (2011). To this end, the Supreme Court has stated that "a defendant's placing goods into the stream of commerce 'with the expectation that they will be purchased by consumers within the forum State' may indicate purposeful availment." *Id*. (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980)). But beyond this descriptive purpose, the meaning of "stream of commerce" is far from exact, and its use does not amend the general rule of personal jurisdiction. *Id*. Rather, "[i]t merely observes that a defendant may in an appropriate case be subject to jurisdiction without entering the forum – itself an unexceptional proposition – as where manufacturers or distributors 'seek to serve' a given State's market." *Id*. (citation omitted).

Thus, the mere awareness that a product will enter the forum state is not enough; there must be a "specific effort" on the part of the defendant to target the forum state. *Id*. at 889; *Monge v. RG Petro-Machinery (Group) Co. Ltd.*, 701 F.3d 598, 619 (10th Cir. 2012) (Noting that under the stream of commerce theory, "[t]he substantial connection between the defendant and the forum 'must come about by *an action of the defendant purposefully directed toward the forum State*.'") (quoting *Asahi Metal Indus. Co., Ltd. v. Superior Ct. of Cal., Solano County*, 480 U.S. 102, 112 (1987) (emphasis in original)).

In *Asahi*, the Supreme Court specifically addressed the stream-of-commerce jurisdiction theory. There, Asahi Metal (Asahi), a Japanese corporation, sold tire

11

valve assemblies to a tire manufacturer in Taiwan. Eventually, tires with the company's valves found their way into California, where an alleged tire defect caused an accident. The victim sued the Taiwanese tire manufacturer in California state court, and the manufacturer impleaded Asahi, who challenged jurisdiction. Despite the fact that Asahi did no business in California and had no control over the distribution system that brought its products into that state, the California Supreme Court upheld jurisdiction on the ground that Asahi knew its valve assemblies would be put in tires sold in California and benefitted indirectly from those sales.

The Supreme Court reversed; however, its attempt to define the elements required for specific jurisdiction under a stream of commerce theory failed to produce a majority opinion. Writing for a plurality of four, Justice O'Connor stated that "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." *Asahi*, 480 U.S. at 112. Rather, some "additional conduct" indicating the defendant's "intent or purpose to serve the market in the forum State" is necessary before personal jurisdiction may be exercised. *Id*. Such additional conduct may include "designing the product for the [forum State's] market .... advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the

sales agent in the forum State." *Id*. While not conclusively limiting "additional conduct" to the foregoing examples, Justice O'Connor clearly excluded a defendant's mere awareness "that the stream of commerce may or will sweep the product into the forum State." *Id*. Such knowledge simply "does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." *Id*.

Here, it is indisputable that Ford delivered its vehicles into the "stream of commerce" with the expectation that they would be purchased by consumers in Oklahoma. The pivotal question is whether Ford engaged in any "additional conduct" such that it could be said to have purposefully availed itself of the privilege of conducting business in Oklahoma. The Court holds that Ford did engage in such activity under the test enunciated in *Asahi*. First, Ford designs and manufacturers its vehicles for the U.S. market, which includes Oklahoma. Second, it is undisputed that Ford vehicles, including the F-150, are the subject of a nationwide advertising campaign and that Ford specifically advertises its vehicles on a continuous basis in Oklahoma. Moreover, Ford maintains numerous dealerships throughout Oklahoma; Ford, in conjunction with these dealerships, establishes channels for providing regular advice, service, and product information to Oklahoma customers.

The Court finds unavailing Ford's argument that personal jurisdiction does not exist because the subject vehicle was assembled in Kansas City, Missouri and later sold to an independent dealership in Indiana. Ford's Mot. at 3, 12. The pivotal inquiry under the stream of commerce theory is whether a defendant has attempted to serve a market and expects its product to be used there. Irrespective of the state of assembly, Ford designs, manufactures, markets, and sells products specifically built for interstate travel, which includes Oklahoma. Ford manufactured and sold the subject vehicle with the reasonable expectation it would be used in Oklahoma and this action arises from the vehicle's use in Oklahoma.

Furthermore, the Court finds that the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice. On this issue, the Supreme Court previously stated:

> [I]f the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980). The Court finds this rationale equally applicable here. "If a defendant's product comes

into the forum state as a result of a deliberate, although perhaps indirect, effort of the defendant to serve the forum state's market, then that defendant may be said to have purposefully availed itself of the protections of that state and is subject to jurisdiction there." *Fidelity & Cas. Co. of N.Y. v. Philadelphia Resins*, 766 F.2d 440, 446 (10th Cir. 1985) (internal quotations omitted). As Judge Seymour noted in her dissent in *Philadelphia Resins*, the *World-Wide Volkswagen* Court focused on the local nature of the defendants' business and the due process concerns of requiring local retailers, sellers and concessionaires to defend against lawsuits all over the country. *Id.* at 447-48 (Seymour, J., dissenting). Such concerns are minimized, however, where the defendant is a national manufacturer or distributor (such as Ford), and personal jurisdiction over such defendants turns on whether they have attempted to serve a given market and can expect their products to be used in a given forum. *Id.* at 448.

Accordingly, the Court finds it has specific jurisdiction over Ford and its motion is denied on this ground.

## II. TRW VEHICLE SAFETY SYSTEMS INC.

TRW contends personal jurisdiction is lacking because (1) it is not "at home" in Oklahoma, (2) it has no corporate presence in Oklahoma, and (3) it did not design, manufacture, or sell the seatbelt system to Ford in Oklahoma. TRW's Mot. at 1.

15

### A. General Jurisdiction

The foregoing analysis with respect to the Court's exercise of general jurisdiction over Ford applies equally to TRW. TRW is a Delaware corporation with its principal place of business in Michigan. TRW's Mot. at 4, Ex. 1; Petition, ¶ 4. It is accordingly considered "at home" in those states. Plaintiffs do not refute TRW's motion on this issue, and only challenge its motion as it relates to the existence of specific jurisdiction. *See* Pl. Resp. Br. at 6 ("Plaintiffs therefore ask that this motion be denied with regard to *specific* jurisdiction.") (emphasis added) [Doc. No. 20]. Accordingly, the Court finds that it does not have general personal jurisdiction over TRW in Oklahoma.

### B. Specific Jurisdiction

Under the test enunciated in *Asahi*, it does not appear the Court can exercise specific personal jurisdiction over TRW. Unlike Ford, the record shows TRW's activity fails to meet any of the examples of "additional conduct" discussed *supra*. There is no evidence that TRW purposefully directed actions toward Oklahoma, i.e., that it ever directly sold its products in Oklahoma. *Asahi*, 480 U.S. at 112. There is no evidence TRW established channels to provide regular advice or product information to Oklahoma consumers or marketed its products through an Oklahoma distributor or sales agent. The record shows TRW's business relationship was with Ford and the products provided and services performed by

TRW were ordered by Ford and delivered to Ford's plants outside Oklahoma. Ford's business relationships and commercial transactions, not TRW's, dictated where and to whom Ford trucks would be delivered.

Plaintiffs reference an Annual Report published by TRW and contend its global marketing efforts indicate its knowledge that its parts would find their way into Oklahoma. The Court finds the distinction pressed by Plaintiffs between knowledge and foreseeability unavailing. As stated, the mere foreseeability that a product might travel to the forum state is insufficient to establish minimum contacts with that state. *Asahi*, 480 U.S. at 112. Based on the record before it, the Court finds TRW's awareness that Ford sells trucks to Oklahoma residents does not demonstrate that TRW purposefully availed itself of the privilege of conducting activities within Oklahoma. In the Court's view, awareness of the final delivery point of a truck does not indicate TRW's "intent or purpose to serve the market of the forum State." *Id*. Whatever contacts TRW has with Oklahoma, under the facts of this case, such contacts are "random, fortuitous, [and] attenuated." *Burger King*, 471 U.S. at 475. Plaintiffs have failed to show that TRW maintained the constitutionally minimum contacts required under *Asahi*'s stream of commerce analysis to permit an exercise of personal jurisdiction.

### III. JURISDICTIONAL DISCOVERY

As a final matter, Plaintiffs seek leave to conduct jurisdictional discovery should the Court feel inclined to grant TRW's motion [Doc. No. 21]. Although the scope of discovery permitted under the Federal Rules is generally quite broad, trial courts are vested with the discretion to permit or deny discovery in aid of jurisdiction. *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002); *Harris v. Am. Intern. Group, Inc.*, 923 F.Supp.2d 1299, 1302 (W.D. Okla. 2013). A refusal to grant discovery constitutes an abuse of discretion if the denial results in prejudice to a litigant; prejudice occurs where "pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Sizova, supra.* Plaintiffs bear the burden of demonstrating a legal entitlement to jurisdictional discovery and the related prejudice flowing from any denial. *Grynberg v. Ivanhoe Energy, Inc.* 490 F. App'x 86, 103 (10th Cir. 2012) (unpublished).

As framed in their motion, Plaintiffs request discovery to ascertain "TRW's knowledge of the geographical breadth of distribution of vehicles produced by its OEM customers and ... the precise make and model of every OEM vehicle which has incorporated one of TRW's component parts over the entire history of TRW's relationship with each respective OEM manufacturer." Aside from the fact Plaintiffs' request appears to be overly broad, Plaintiffs have not adequately

shown, to the Court's satisfaction, their entitlement to jurisdictional discovery, i.e., how this discovery would enable them to respond to the issues in TRW's motion. The Court has repeatedly observed in this Order that the mere foreseeability that a product might travel to the forum state is insufficient to establish minimum contacts with that state. *Asahi*, 480 U.S. at 112. Based on the uncontroverted evidence in TRW's motion, the Court finds there is a low probability that the lack of discovery would affect the outcome of the instant motions to dismiss. *See Grynberg*, 490 F. App'x at 103 ("The district court does not abuse its discretion by denying jurisdictional discovery where there is a 'very low probability that the lack of discovery affected the outcome of this case.'") (quoting *Bell Helicopter Textron, Inc. v. Heliqwest Intern., Ltd.*, 385 F.3d 1291, 1299 (10th Cir. 2004)). In light of the foregoing analysis, the Court chooses to exercise its discretion and deny Plaintiffs' motion requesting jurisdictional discovery.

## CONCLUSION

Defendant Ford Motor Company's Motion to Dismiss [Doc. No. 10] is **DENIED** as set forth herein. Defendant TRW Vehicle Safety Systems Inc.'s Motion to Dismiss [Doc. No. 11] is **GRANTED** as set forth herein. Plaintiff's Motion for Discovery Relative to Ford Motor Company's Motion to Dismiss [Doc. No. 19] is **DENIED** as moot. Plaintiff's Motion for Discovery Relative to TRW

Vehicle Safety Systems Inc.'s Motion to Dismiss [Doc. No. 21] is **DENIED** as set forth herein.

**IT IS SO ORDERED** this 5th day of December, 2016.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE