# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| HARRY AND/OR TAMMY TARVER, Individually and as personal representatives Of the ESTATE OF TRAVIS SCOTT TARVER, deceased, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. CIV-16-548-D ) |
| FORD MOTOR COMPANY, a Delaware corporation, | ) ) ) ) |
| Defendant. | ) |

## ORDER

Defendant Ford Motor Company (Ford) moves the Court to reconsider its December 5, 2016 Order denying Ford's Motion to Dismiss for Lack of Personal Jurisdiction [Doc. No. 62]. Relying on the recent Supreme Court decision in *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cnty.*, 137 S.Ct. 1773 (2017), Ford contends there has been an intervening change in controlling law that requires the Court to vacate the denial of its Motion. Plaintiffs have filed their response in opposition [Doc. No. 63], and Ford has replied [Doc. No. 64]. The matter is fully briefed and at issue.

# BACKGROUND[1]

Plaintiffs' son, Travis, owned a 2002 Ford F-150 pickup truck. On November 10, 2014, while driving on Oklahoma State Highway 270, he came upon an 18-wheeler truck stopped in the highway. Travis attempted to go around the truck and lost control of his vehicle. Travis' truck began to roll over, during which the seat broke from the floor and the seatbelt was torn, causing Travis to be ejected from the vehicle; Travis died from his injuries. Plaintiffs filed suit against Ford[2] alleging the truck was defective at the time it was manufactured by Ford and unreasonably dangerous to any person who might have been affected by it, including Travis.

Ford moved to dismiss Plaintiffs' suit on jurisdictional grounds, arguing that it was not "at home" in Oklahoma and the suit did not arise from Ford's contacts with the state. Plaintiffs contended Ford's business activities leading up to the accident and placing the truck in the "stream of commerce" rendered it subject to personal jurisdiction. In denying Ford's Motion, the Court found that it did not have

---

[1] The above facts were taken from the Court's Order denying Ford's Motion to Dismiss [Doc. No. 51] and viewed in Plaintiffs' favor. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).

[2] Plaintiffs also sued TRW Vehicle Safety Systems, Inc., the manufacturer and designer of the seatbelt system, alleging the seatbelt system was defective and TRW was jointly responsible with Ford for placing the alleged defective seatbelt system in the stream of commerce. The Court granted TRW's motion to dismiss on the grounds that the Court lacked general jurisdiction over TRW and the company did not have sufficient minimum contacts as to support specific personal jurisdiction.

general jurisdiction since Ford did not have "continuous and systematic contacts" in Oklahoma, and outside of their allegations that Ford did significant business in the state, Plaintiffs failed to allege any facts that would suggest that Ford had such continuous contact to render it "at home" in this forum. *See* Order, Dec. 5, 2016 at 7-8 [Doc. No. 51].

However, the Court found it could exercise specific personal jurisdiction over Ford because (1) Ford had sufficient "minimum contacts" with Oklahoma such that it should have reasonably anticipated being haled into court there for Travis' death, and (2) the exercise of personal jurisdiction would not offend traditional notions of fair play and substantial justice. In sum, the Court found that Ford purposefully availed itself of the privilege of doing business in Oklahoma in that it designed, manufactured, marketed, and sold products specifically built for interstate travel, which included Oklahoma. Since Ford placed the product at issue in the "stream of commerce," and Plaintiffs' claim arose out of the vehicle's use in Oklahoma, the Court found the exercise of personal jurisdiction was reasonable. *See id*. at 9-15.

### *Bristol-Myers*

In *Bristol-Myers*, out-of-state plaintiffs joined California plaintiffs in state court litigation based on injuries purportedly caused by the Bristol-Myers prescription drug Plavix. Over 600 plaintiffs brought suit in California; however, only eighty-six of those plaintiffs were actually California residents. Bristol-Myers

3

was not a citizen of California. The nonresidents did not allege that they purchased the harmful product in question in California, nor did they allege that they suffered any injury in California. The California Supreme Court ultimately concluded that general jurisdiction was lacking. However, it determined that California courts had specific jurisdiction over the claims of the nonresident plaintiffs. The California Supreme Court reasoned that Bristol-Myers' extensive contacts with the state and the similarity to the claims of the California residents supported its decision.

The Supreme Court reversed. It held that the exercise of specific jurisdiction over the *non-California plaintiffs'* claims violated the Due Process Clause. 137 S. Ct. at 1783-84. The Court, relying on *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011), stated "there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id*. at 1780 (quoting *Goodyear*, 564 U.S. at 919) (internal quotation marks omitted). The Court elaborated that when no such connection exists, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the state." *Id*. at 1781. The existence of forum activities unrelated to the cause of action – including the operation of research laboratories not connected to Plavix, employment of sales representatives, and the maintenance of a state-government advocacy office–did not affect the analysis. *Id*. Moreover, Bristol-Myers did not develop, manufacture, label,

4

package, or work on the regulatory approval or marketing strategy for Plavix in California. *Id*. at 1778. The Court then explained that "[t]he mere fact that other plaintiffs were prescribed, obtained, and ingested Plavix in California does not allow the State to assert specific jurisdiction over the nonresidents' claims ... [w]hat is needed is a connection between the forum and the specific claims at issue." *Id*. at 1778, 1781. The Court specifically noted, however, that "the plaintiffs who are residents of a particular State-for example, the 92 plaintiffs from Texas and the 71 from Ohio-could probably sue together in their home States." *Id*. at 1783.

## STANDARD OF DECISION

Technically, "[a] motion for reconsideration [is] not recognized by the Federal Rules of Civil Procedure." *Computerized Thermal Imaging, Inc. v. Bloomberg, L.P.*, 312 F.3d 1292, 1296 n. 3 (10th Cir. 2002). The Court construes such motions as filed pursuant to Rule 59(e)(motions to alter or amend a judgment) or Rule 60(b)(relief from a final judgment, order, or proceeding), depending on the asserted justification for, and timing of, the motion. *Id*.; *compare Servants of Paraclete v. John Does I-XVI*, 204 F.3d 1005, 1012 (10th Cir. 2000) ("Grounds warranting a motion to reconsider [under Rule 59(e)] include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice."), *with* Fed. R. Civ. P. 60(b) (justifying relief for reasons such as "mistake, inadvertence, surprise . . . excusable neglect . . . newly

5

discovered evidence . . . [or] fraud"). A motion to reconsider is thus appropriate where the court has misapprehended the facts, a party's position, or the controlling law. *Servants of Paraclete*, 204 F.3d at 1012. It should not be used to revisit issues already addressed or advance arguments that could have been raised earlier. *Id*.

## DISCUSSION

Ford's Motion relies on Rule 59(e), which allows for reconsideration upon an intervening change in controlling law. It contends that the Court's Order must be rescinded because the *Bristol-Myers* decision reinforces its stated objections to personal jurisdiction in this case. Although the Court of course recognizes the *Bristol-Myers* decision as controlling precedent, it finds Ford's Motion should nonetheless be denied for two reasons.

First, Ford's Motion was denied in substantial part pursuant to the "stream of commerce" theory articulated in *Asahi Metal Indus. Co., Ltd. v. Superior Ct. of Cal., Solano County*, 480 U.S. 102 (1987). The Court's decision in *Bristol-Meyers* makes no mention of the "stream of commerce" doctrine. Rather, the Court made its decision through a "straightforward application" of "settled principles of personal jurisdiction." *Bristol-Myers*, 137 S. Ct. at at 1783.[3] To this end, Ford's Motion

---

[3] In addition, the Court's decision in *Bristol-Meyers* "concern[ed] the due process limits on the exercise of personal jurisdiction by a State," and "le[ft] open the question of whether the Fifth Amendment imposes the same restrictions on ... a federal court." *Id*. at 1784.

6

revisits issues already addressed by the Court, which is a prohibited use of a motion for reconsideration. Under the same "settled principles of personal jurisdiction," the Court found Plaintiffs had met their burden of proving specific personal jurisdiction existed and denied Ford's motion to dismiss. Accordingly, Ford's instant Motion is denied on this ground.

## II

Moreover, the facts of the present case and *Bristol-Myers* are distinguishable. The *Bristol-Myers* Court's analysis focused on due process considerations as they applied to *the nonresident plaintiffs* suing in California. The Court specifically noted the nonresidents (1) did not claim to have suffered harm in California and (2) their claims did not allege harm to California residents. *Id*. at 1782. However, the Court held the non-resident plaintiffs could perhaps sue in their respective home states. *Id*. at 1783. Here, Plaintiffs, who are Oklahoma residents, suffered injury in Oklahoma and brought their lawsuit in Oklahoma. Coupled with the application of the "stream of commerce" doctrine, this Court found that the exercise of personal jurisdiction would be appropriate and reasonable. On this issue, *Bristol-Myers* buttresses the Court's finding that specific personal jurisdiction exists in the present case.

## CONCLUSION

Accordingly, Defendant's Motion to Reconsider Based on Intervening Change in Controlling Law [Doc. No. 62] is **DENIED** as set forth herein.

7

**IT IS SO ORDERED** this 16th day of August 2017.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE